UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Truc Thi Lam Hoang** )<br>43/10 Tran Hung Dao )<br>An Cu Ward )<br>Ninh Kieu District )<br>Can Tho City, Vietnam, 90000 )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**United States Citizenship and Immigration** )<br>**Services** )<br>  5900 Capital Gateway Drive )<br>  Mailstop 2120 )<br>  Camp Springs, MD 20588-0009 )<br>)<br>Defendant. ) | **COMPLAINT**<br><br>Case No.: 1:24-cv-01369 |

## COMPLAINT

For decades, the United States Citizenship and Immigration Services ("USCIS") and its predecessor Immigration and Naturalization Service ("INS") welcomed immigrant investors to our shores based on substantial investments of capital destined to create American jobs. This has especially true for EB-5 investors hailing from countries which have restrictive currency conversion policies, which are diametrically opposed to core U.S. foreign monetary policy.

Yet, with no regulatory or policy change, a rogue immigration agency began pushing back and denying EB-5 immigrant investor petitions with materially identical facts to hundreds of those it had approved approximately five years ago. This sharp departure from approximately 30 years of the status quo – again without warning or any kind of announcement – has soured the American Dream for hundreds of families depending upon established agency practice. In essence, investors from Vietnam – historically the second-largest source of visa demand – have

borne the burden of this illegal and unconscionable policy shift without notice or explanation.

Among these burdened Vietnamese investors is Plaintiff Truc Thi Lam Hoang ("Plaintiff Hoang") who is facing an erroneous and arbitrary denial of her properly filed Form I-526, Immigrant Petition by Alien Entrepreneur. On or about March 25, 2024, Plaintiff Hoang submitted a *Freedom of Information Act* ("FOIA") request to obtain records relating to USCIS' policies and adjudication trends of Vietnamese Form I-526 petitions utilizing lawful money exchangers.

Plaintiff Hoang hoped these records would help explain why the money exchanger she used was the foundation of USCIS' denial of her petition when many prior investors – with material the same facts – received approvals after using the same money exchanger. Defendant has yet to produce the responsive files in direct contravention of the law and to Plaintiff Hoang's detriment.

Pursuant to 5 U.S.C. § 552(a)(6)(B), Defendant had, at most, thirty (30) business days from the day of receiving Plaintiff's Request to determine whether to comply with the request and the reasons therefor. It has been over 33 business days since Defendant received the Request. As of the time of filing this Complaint, Defendant has not made a determination on the Request nor produced any of the requested records. It is not even clear whether Defendant has attempted to search for these records. This is unsurprising, but nonetheless, illegal. Plaintiff's immigrant petition is subject to appeal and these records are needed to prosecute that appeal.

Accordingly, Plaintiff respectfully requests that this Court issue an order directing Defendant to, inter alia, complete a FOIA search, make a determination on Plaintiff's FOIA request, and promptly provide the records that they have unlawfully withheld in violation of 5 U.S.C. § 552(a).

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, specifically the *Freedom of Information Act*.

2. This Court may grant relief pursuant to 5 U.S.C. § 552 (*Freedom of Information Act*).

3. This Court also has authority to grant relief under the *Declaratory Judgment Act* (28 U.S.C. § 2201).

4. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) because the agency records are situated in this District, and the agency may be sued in this District. Venue is also proper under U.S.C. § 1391(e)(1)(A) because Defendant resides in this District and a substantial portion of the events giving rise to this action occurred in this District. Specifically, the IPO is located in Washington, D.C., and upon information and belief, all associated records are located there.

5. Plaintiff is deemed to have exhausted all administrative remedies because the agency "fail[ed] to comply with the applicable time limit provisions of [5 U.S.C. § 552(a)(6)(C)(i)]." 5 U.S.C. § 552(a)(6)(C)(i).

6. Declaratory relief is appropriate under 28 U.S.C. § 2201.

7. Injunctive relief is appropriate under 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

8. Plaintiff Truc Thi Lam Hoang is a citizen and national of Vietnam. She invested $500,000 in a new commercial enterprise, CPT EB5 LLC (the "NCE") under the sponsorship of Extell New York Regional Center, LLC. She used a licensed money exchanger in Vietnam called Compass Global Holding Pty Ltd. ("Compass") to lawfully transfer her funds to the NCE. She maintains a permanent residence in Can Tho City, Vietnam.

9.      Defendant USCIS is a U.S. government agency within the meaning of 5 U.S.C. § 552(f)(1). USCIS is a component of the Department of Homeland Security ("DHS"), an agency within the Executive Branch. Among other duties and responsibilities, USCIS is responsible for adjudicating EB-5 related benefits, as well as the formation and execution of related EB-5 policies and procedures. USCIS has the possession and control of the public records that Plaintiff Hoang has requested under the FOIA statute and has the duty to provide the same.

## STATUTORY FRAMEWORK

*EB-5 Program, I-526 Petitions, and Permanent Residency*

10.     Congress created the EB-5 Program in 1990 to stimulate the U.S. economy through job creation and capital investment by foreign investors. Generally, an EB-5 visa is available to a foreign national who invests the requisite amount of capital into a new commercial enterprise that creates at least 10 jobs for lawful American workers. 8 U.S.C. § 1153(b)(5).

11.     To obtain an EB-5 Green Card, a foreign entrepreneur must endure three separate steps. First, they must submit a Form I-526 Petition and supporting documentation demonstrating that the required capital has been committed and is actually at risk; that the investment is made from the entrepreneur's own lawfully acquired funds; and the existence of a comprehensive business plan demonstrating that ten full-time jobs will be created by the investment. 8 C.F.R. § 204.6(j).

12.     Once an investor's Form I-526 Petition is approved, a foreign investor residing within the United States may submit a Form I-485 to adjust status to that of a conditional lawful permanent resident. If the investor is abroad, they will process through the local consulate having jurisdiction over the case. *See* 8 U.S.C. § 1186b(a)(1); 8 C.F.R. § 245.1(h).

13.     Conditional permanent residency expires two years after its granting. 8 U.S.C. §§ 1186b(a)(1), (d)(2)(A).

14. Near the end of two years of residency, the investor and his/her family must complete a third step to acquire full lawful permanent residency. *Id.* at §1186b(d)(2)(A).

15. The investor must file a Form I-829, Petition by Investor to Remove Conditions on Permanent Resident Status within 90 days of the second anniversary of receipt of such status: "a petition [to remove conditions] shall be filed during the 90-day period immediately preceding the second anniversary of the alien's investor's lawful admission for permanent residence." *Id.* at §1186b(d)(2)(A); *see also* I-829, Petition by Investor to Remove Conditions on Permanent Resident Status, U.S. Citizenship & Immigration Services, *available at* https://www.uscis.gov/i-829 (*last accessed* May 7, 2024).

16. The investor must submit evidence that the investment remained at risk during the entire period of conditional permanent residency and that the investment created at least 10 full-time jobs for American workers. 8 C.F.R. § 216.6(c)(1).

*Currency Swaps*

17. Many countries in Africa, Asia, and the Middle East set restrictions on the amount of money that can be transferred to the U.S. and/or the amount of U.S. dollars that may be purchased. *See e.g.,* EB5AN, "Currency Swaps: What Investors Need to Know", *available at* https://eb5visainvestments.com/2020/11/20/currency-swaps-what-eb-5-investors-need-to-know/ (*last accessed* May 7, 2024); *see also* Hermansky, J. "Third Party Currency Swaps: Considerations for RFEs", (October 2018) available at https://iiusa.org/wp-content/uploads/2019/01/Third-Party-Currency-Swaps-Considerations-for-RFEs.pdf (*last accessed* May 7, 2024).

18. The success of the EB-5 Visa was built upon such swaps. Historically, the largest participants in the EB-5 program have been investors from Mainland China, which restricts

conversion of the Chinese Renminbi to the U.S. dollar.

19.     In 2003, EB-5 stakeholders reached out to Legacy INS and USCIS to ensure that currency restrictions notwithstanding, investors could still have their petitions approved. As described by one of the most seasoned stakeholders in the EB-5 industry:

> Because of its troubled history, there was limited investor interest in the EB-5 program[.] We understood the potential of the China market and wanted to introduce the EB-5 program in China. But, obviously, if China's currency restriction policy was going to be a USCIS source of funds concern, we didn't want to waste our time or money in that market. We openly vetted the issue with [the former head of USCIS], who understood our concern, but indicated that he needed to raise the issue internally and get a determination from more senior agency officials. It took several months, but eventually [that official] advised that USCIS concluded that it was charged with determining if an applicant earned his or her capital legally and that it was not the agency's job to enforce China's restrictive currency policy. That green light is why we pursued the China market.
>
> *See* EB5 Investors Magazine, "The Man Behind CanAm", (Aug. 20, 2015), *available at* https://www.eb5investors.com/magazine/article/man-behind-canam (Aug. 20, 2015) (last accessed May 7, 2024).

20.     Tens of thousands of investors and their families later, the U.S. has become a major destination for immigrant investment. USCIS continues to, and always has, policed the lawful sourcing and funding of immigrant capital. Pursuant to 8 CFR 204.6(j)(3), the investor must show that the capital invested was obtained through lawful means.

21.     However, the agency had never attempted to enforce foreign currency conversion restrictions, or the methods used by immigrant investors to transfer capital to the U.S., provided that that capital was lawfully acquired.

22.     In the mid to late 2010s, this all suddenly changed. As noted in Plaintiff Hoang's FOIA Request: "For years, USCIS accepted 'currency swaps' as an acceptable method for transferring funds to the U.S… Recently however, USCIS has shifted their policy through adjudication of I-526 Petitions and, as part of their examination of the lawful source of funds of the investor, is

examining the source of the U.S. dollars used by the other party in the currency swap." *See FOIA Request* (*attached as* **Exhibit A)** (*citing* Hermansky, J. "Third Party Currency Swaps: Considerations for RFEs", (October 2018) available at https://iiusa.org/wp-content/uploads/2019/01/Third-Party-Currency-Swaps-Considerations-for-RFEs.pdf (*last accessed* May 7, 2024)).

23. Relatively recently, USCIS began issuing Requests for Evidence ("RFEs") and Notices of Intent to Deny ("NOIDs") to investors who utilize currency swaps (a.k.a. "informal value transfers" or "IVTs"), making it increasingly difficult for investors from certain countries to obtain EB-5 approvals. *Id.; see also* de Kirby, V. "USCIS issues RFEs in EB-5 petitions using 3rd Party Money Exchangers", *available at* https://www.jatoidekirby.com/library/3rd-party-money-exchangers.cfm (*last accessed* May 7, 2024) ("In the past, USCIS approved cases where a 3rd party money exchanger was used without a Request for Evidence (RFE). However, since March 2023, RFEs are being issued for all such cases, asking for documentation pertaining to the source of funds for the 3rd party.").

24. Unfortunately, those RFEs metastasized into denials. Investors, especially those from Vietnam, used the same methods to transfer capital blessed by USCIS for decades that their friends and family used to obtain lawful permanent residency through the EB-5 program.

25. Without notice or explanation, USCIS pulled the proverbial rug out, ending the American Dream for unwitting families who followed the only paths to the U.S. they had known.

26. This is the central challenge Vietnamese investors, including Plaintiff Hoang, face today. Vietnam is one of the top international markets for EB-5 investors, but Vietnam severely restricts the purchase of U.S. dollars with Vietnamese Dong. Therefore, Vietnamese investors must utilize third parties and/or cryptocurrency to make the requisite lawful investment.

27. Many Vietnamese investors are in Plaintiff Hoang's situation. After years of delay in acting upon their petitions, they receive burdensome RFEs, which require additional tomes of evidence to further prove that their funds were lawfully transferred and obtained. They struggle to understand why USCIS disregarded and incorrectly analyzed the pertinent evidence they provided. In some cases, they also receive vague and opaque denials devoid of thorough factual analysis and regard for the applicable standards of evidence. They try to wrap their minds around how their sizeable investments in the United States could yield such bitter returns. They have no idea what USCIS' policies are, were, or will be, and neither do private EB-5 stakeholders.

28. The purpose of Plaintiff Hoang's FOIA request is to obtain information and records relating to USCIS's practices and policies regarding the adjudication of Forms I-526, specifically regarding Vietnamese investors who must utilize third parties' money exchangers like Compass or other IVTs to make the requisite U.S. investment.

*FOIA*

29. Pursuant to 5 U.S.C. § 552(a)(3)(A), an agency is required to promptly make disclosable records available upon request.

30. An agency has twenty (20) business days from the day of receiving a request to determine whether to comply with the request and provide the reasons therefor. 5 U.S.C. § 552(a)(6)(A).

31. Under "unusual circumstances," an agency may request an extension of not more than ten business days to respond to the request. 5 U.S.C. § 552(a)(6)(B).

32. Thereafter, the agency is only permitted to withhold responsive records if the records fall under one of the nine enumerated exceptions in 5 U.S.C. § 552(b)(1)-(9).

33. If the agency makes a request to the requester for information or clarification, the twenty-day period may be tolled while it is awaiting such information. 5 U.S.C. § 552(a)(6)(A)(ii). The

tolling period ends upon the agency's receipt of the requester's response to the agency's request for information or clarification. *Id.*

34. A FOIA requestor may request the district court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS

35. On or about November 27, 2018, Plaintiff Hoang filed her I-526 petition.

36. USCIS did not take substantive action on the petition for nearly five years, despite her EB-5 project having many approvals, including for investors that filed after her.

37. USCIS merely issued a receipt number and issued a Request for Evidence ("RFE") to request a minor update regarding project qualifications. Plaintiff Hoang's attorney promptly responded to USCIS' RFE.

38. Plaintiff Hoang waited, and after a year of silence from USCIS, her attorney resubmitted the response on August 2022. The IPO finally confirmed receipt, and Plaintiff Hoang's USCIS case status changed from "case was received" to "request for evidence was received."

39. This lack of substantive action was in clear violation of its rule of reason for adjudications. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330 (D.C. Cir. 2023).

40. Accordingly, on or about October 10, 2023, Plaintiff Hoang filed suit against Defendant's Director, alleging a violation of the Administrative Procedure Act for this unlawful delay. *See Hoang et al v. Jaddou,* 1:23-cv-02996-ACR (D.D.C. 2023).

41. Defendant then decided the petition, in this case a denial, mooting the previous APA litigation. It then became necessary for Plaintiff Hoang to appeal her case to the USCIS Administrative Appeals Office.

42. The reason for denial was that she utilized Compass, even though hundreds, if not thousands, of investors have done so previously with success.

43. Her notice of appeal, i.e. her Form I-290B filing, was due on April 27, 2024. Nevertheless, she may still submit evidence in support of her appeal.

44. In order to prosecute her appeal and evidence Defendant's arbitrary departure from the status quo, on or about March 25, 2024, Plaintiff Hoang submitted a FOIA request ("Request") to Defendant. In summary, Plaintiff requested that Defendant produce:

> (1) Records relating to USCIS adjudications, including approvals, denials, RFEs, NOIDs, and total adjudications for Forms I-526 for Petitioners utilizing the services of Compass and Van Dang LE, a natural person, from FY 2017 – 2023;
>
> (2) All written communication between USCIS personnel relating to the adjudication of Plaintiff Hoang's Form I-526 from November 27, 2018 – March 25, 2024;
>
> (3) All records mentioning Compass in the USCIS-maintained "IVT Tracker;"
>
> (4) All records mentioning the natural person LE, Van Dang in the USCIS-maintained "IVT Tracker;"
>
> (5) All contents of the USCIS-maintained "IVT Tracker;"
>
> (6) All records prepared, created, received, transmitted, collected, and/or maintained by USCIS relating or referring to policies or procedures for the adjudication of Forms I-526 or Forms I-829 for Petitioners utilizing the services of Compass;
>
> (7) All records relating or referring to the USCIS-maintained "IVT Tracker;"
>
> (8) Records relating to USCIS adjudications, including approvals, denials, RFEs, NOIDs, and total adjudications for Forms I-829 for Petitioners utilizing the services of Compass and Van Dang LE, a natural person, from FY 2017 – 2023;

(9) All records prepared, created, received, transmitted, collected, and/or maintained by USCIS relating or referring to any policy or procedure to delay, avoid adjudication, or otherwise deviate from USCIS' "Visa Availability Approach" from January 1, 2016 – March 1, 2024;

(10) All records involving communication between (a) USCIS' Immigrant Investor Program Office ("IPO"), its employees, contractors, and/or management and (b) the USCIS Office of Policy and Strategy (OP&S) that relate or refer in any way to any policy or procedure involving IVTs in the EB-5 adjudication context from January 1, 2016 – March 1, 2024; and

(11) All records involving communications between (a) USCIS' Immigrant Investor Program Office ("IPO"), its employees, contractors, and/or management and (b) the USCIS Ombudsman Office that relate or refer in any way to any policy or procedure involving IVTs in the EB-5 adjudication context from January 1, 2016 – March 1, 2024.

45. Plaintiff Hoang's Request also included a request for expedited processing, citing the extreme time-sensitivity and noting that the requested information was critical to her Form I-290B appeal to USCIS. In her declaration, Plaintiff Hoang's declaration stressed her fear of losing substantial due process rights if she did not timely receive the responsive records.

46. On March 26, 2024, Plaintiff Hoang received correspondence ("the Letter") from Defendant confirming receipt of the Request on March 25, 2024. Defendant assigned the Request the control number EB52024000035. *See attached as* **Exhibit B.**

47. Defendant denied Plaintiff Hoang's request for expedited processing. Ironically, Defendant's boilerplate denial cited 6 C.F.R. § 5.5(e)(1)(i-iv), wherein sub (iii) names "the loss

of substantial due process rights" as a situation that warrants expedited treatment.

48.     Pursuant to 5 U.S.C. § 552(a)(6)(A), Defendant had twenty business days from the day of receiving Plaintiff's request to determine whether to comply with the request and provide the reasons therefor. However, Defendant invoked a 10-day extension to respond under 5 U.S.C. § 552(a)(6)(B).

49.     Therefore, Defendant's determination was due, at the latest, on May 6, 2024.

50.     It has been over 33 business days. Defendant has not made a determination on Plaintiff's FOIA request or produced any of the requested documents.

## CAUSE OF ACTION

### COUNT I
### Violation of the Freedom of Information Act
### under 5 U.S.C. § 552(a)

51.     Plaintiff re-alleges all allegations contained herein.

52.     Defendant failed to make a determination, and provide the reasons therefor, on the Request in violation of 5 U.S.C. § 552(a)(6)(A).

53.     Defendant failed to produce any of the requested records in violation of 5 U.S.C. § 552(a).

54.     Defendant failed to provide any legal justification for its failure to comply with 5 U.S.C. § 552(a).

55.     Because Defendant has failed to meet the statutory deadlines, Plaintiff is deemed to have exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A.      Declare that Defendant's failure to make determinations on Plaintiff Hoang's request and the subsequent withholding of the records requested is unlawful under the FOIA;

B. Order Defendant to immediately produce and release the requested documents to Plaintiff by a date certain;

C. Retain jurisdiction to ensure that Defendant provides Plaintiff Hoang all responsive records and that it lawfully and reasonably segregates portions of any exempt records sought in this action;

D. Order USCIS to pay reasonable attorneys' fees pursuant to FOIA, the *Equal Access to Justice Act*, and/or any other provisions of law; and

E. Enter and issue other relief that this Court deems just and proper.

Dated: May 10, 2024       Respectfully submitted,

/s/ Matthew Tony Galati
MATTHEW TONY GALATI
The Galati Law Firm
8080 Old York Rd.
Suite 225
Elkins Park, PA 19027
Telephone: (215) 309-1728
E-mail: matt@galati.law
D.D.C. Bar No. PA0093

*Attorney for Plaintiff*

/s/ Alexandra George
ALEXANDRA GEORGE
The Galati Law Firm
8080 Old York Rd.
Suite 225
Elkins Park, PA 19027
Telephone: (215) 660-0393
E-mail: alex@galati.law
D.D.C. Bar No. IL0113

*Attorney for Plaintiff*